Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3883 | **DATE** | 9/26/2002 |
| **CASE TITLE** | Jarvis vs. Sigmatron | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion for summary judgment (13-1) with respect to the harassment claim and denying it as to Ms. Jarvis' Title VII claim. Defendant's motion to strike (36-1) is denied as moot. Defendant's motion to bar (30-1) testimony of plaintiff's witness Dr. Richard Elghammer is denied as moot with the condition that if, contrary to my belief, he would still be expected to testify on the limited issues left in the case, the parties shall let me know within two weeks and I will consider the motion. Ruling on that motion set for 10/4/02 is vacated. Parties' joint motion for extension of time is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | 3 number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 27 2002 | 40 |
| ✓ | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | docketing deputy initials 9/26/2002 | |
| MPJ | courtroom deputy's initials | 02 SEP 26 PM 5:31 Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 27 2002

RUTHIE JARVIS, )
)
        Plaintiff, )
)
v. )
)
SIGMATRON INTERNATIONAL INC., a ) No. 01 C 3883
Delaware Corporation, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruthie Jarvis sued her employer, defendant SigmaTron International Inc. ("SigmaTron") for sexual harassment and discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq.[1] SigmaTron now moves for summary judgment. I grant the motion with respect to the harassment claim and deny it as to Ms. Jarvis' Title VII claim.

## I. Background

Ms. Jarvis was hired by SigmaTron in 1997 as a programmer. Her immediate supervisor was Todd Maberry. Vince Ottaviano was another supervisor, and above them was Andy Saarnio. Dave Colbert,

---

[1] Ms. Jarvis also included a count in her complaint alleging violation of the Equal Pay Act, 29 U.S.C. § 206(d). She has voluntarily dismissed that count.



Dave Cool, Miguel Navarette, and Nick Anthanailos were coworkers with no supervisory authority over Ms. Jarvis.

Ms. Jarvis refers to multiple incidents of harassment while at SigmaTron. She states that Mr. Ottaviano was constantly touching her shoulder, back, sides, and occasionally her hip. (Jarvis Dep. at 171-73.) On her last day of work, he pulled her hair, and Mr. Cool poked her in the buttocks. (Pl.'s Supplemental Resp. to Interrog. No. 8.)

She refers to an incident in which Mr. Cool told her that Mr. Saarnio "watched [her] bend over looking through the box." Mr. Cool went on to say "I would have said something but I was watching too." (Pl.'s Supplemental Resp. to Interrog. No. 8.)

Ms. Jarvis states that Mr. Colbert asked her out on a date three or four times (Jarvis Dep. at 136), that he told her he would like to take her home and "he could make [her] feel good all night long" (Pl.'s Supplemental Resp. to Interrog. No. 8; Jarvis Dep. at 138), and that "[he]'d do her if [she] didn't have a boyfriend" (Pl.'s Supplemental Resp. to Interrog. No. 8). She also states that Mr. Colbert would grab her and squeeze her and try to touch her chest, which on occasion he did (Jarvis Dep. at 143-44).

Finally, she states that Mr. Navarette told her that she smelled good enough to eat, that he bet she tasted good, and that he dreamed about her coming out of the shower. (Pl.'s Supplemental Resp. to Interrog. No. 8.) She also states that Mr. Anthanailos

2

repeatedly referred to women as "stupid" and "worthless," and that he told her that she "could make more money standing on the corner." (Pl.'s Supplemental Resp. to Interrog. No. 8.)

Ms. Jarvis also states that she was denied promotions and pay raises (Pl.'s Mem. in Opp'n. to Mot. for Summ. J. at 17), and that Mr. Ottaviano once told her that men supporting families were paid more than she was and that she was paid less because she lived with her mother (Jarvis Dep. at 8-9.). She resigned on February 14, 2000.

Summary judgement is proper when "there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, I "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits*, 185 F.3d at 731 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). While I apply this standard with particular care in employment discrimination cases, *see Adusumilli v. City of Chicago*, 164 F.3d 353, 360-61 (7th Cir. 1998), the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e); *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## II. Sexual Harassment

In order for a plaintiff to prevail on a sexual harassment claim, she must demonstrate that: (1) she was subject to unwanted harassment; (2) the harassment was based on sex; (3) the harassment created an intimidating, hostile or offensive working environment; and (4) there is a basis for employer liability. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002). That the first two elements of this test are met is not disputed.

### A. Hostile Environment

In evaluating the third element, I look at the totality of the circumstances, including "the frequency of the [harassing] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Worth v. Tyer*, 276 F.3d 249, 267 (7th Cir. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Additionally, I must examine these factors from both a subjective and objective viewpoint, meaning that the harassment must have been perceived by the employee as creating an abusive environment as well as been severe or pervasive enough that a reasonable person would find the environment hostile

or abusive. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1454 (7th Cir. 1994) (citing *Harris,* 510 U.S. at 21-22).

### 1. Subjective Viewpoint

Ms. Jarvis states that because of Mr. Colbert's behavior, she tried to avoid him. (Jarvis Dep. at 135). She also states that she complained to Mr. Maberry about offensive conduct and comments. (Jarvis Dep. at 149-50, 154.) Finally, she states that prior to quitting, she had wanted to leave SigmaTron every day. (Jarvis Dep. at 211.) This evidence is sufficient to create a factual issue on the question of whether Ms. Jarvis subjectively perceived her work environment to be hostile. *See Dey,* 28 F.3d at 1454 (deposition testimony of plaintiff stating that superior's conduct upset and embarrassed her and made her feel uncomfortable, that his comments caused her to walk out of his office, that she just wanted comments to stop, and that she complained to supervisor held sufficient to create a factual issue as to subjective perception of hostile environment).

SigmaTron argues that because Ms. Jarvis admits she fully performed her duties during her time at SigmaTron (Jarvis Dep. at 52-53), the harassment had no effect on her work performance and thus does not rise to the level of a Title VII violation. While interference with work performance is certainly one of the factors to consider when analyzing the severity of workplace harassment, "no single factor is required." *Saxton v. American Tel. and Tel.*

5

*Co.*, 10 F.3d 526, 534 (7th Cir. 1993) (citing *Harris*, 510 U.S. at 11). Further, the consideration of interference with performance "[is] not intended to penalize the employee who possesses the dedication and fortitude to complete her assigned tasks even in the face of offensive and abusive sexual banter. . . . [T]hat women who are the objects of discriminatory behavior because of their sex are able to maintain satisfactory job performance is not grounds for denigrating their concerns." *Dey*, 28 F.3d at 1454-55 (internal citations omitted). The fact that Ms. Jarvis's job performance did not suffer as a result of the harassment is not evidence that she did not subjectively perceive her work environment as hostile.

### 2. Objective Viewpoint

The Seventh Circuit has noted that drawing the line between sexual harassment and nonactionable workplace vulgarity is not always easy. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995).

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* (internal citations omitted). In that case, the court found that a supervisor's behavior did not constitute harassment because he never touched the plaintiff, never explicitly or implicitly invited her to have sex with him or to go out with him, never

threatened her, exposed himself, showed her dirty pictures or said anything to her that could not be repeated on television. *See id.* at 431.

In contrast, much of the conduct alleged by Ms. Jarvis falls on the other side of the line. While Mr. Ottaviano's touching does not constitute actionable sexual harassment because it was done without sexual intent or innuendo,[2] *see Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (acts of rubbing back and squeezing shoulder that involved no threats, intimidation, or humiliation not actionable harassment), Ms. Jarvis was subject to repeated nonconsensual physical contact from Mr. Colbert. Mr. Colbert's contact included the occasional touching of Ms. Jarvis's breast, "one of the most severe forms of sexual harassment." *Worth,* 276 F.3d at 268. Ms. Jarvis was also subject to explicit sexual solicitations from Mr. Colbert (he would like to take her home, "he could make [her] feel good all night long," and that "[he]'d do her if [she] didn't have a boyfriend"), and implicit sexual solicitations from Mr. Navarette (she smelled good enough to

---

[2] Ms. Jarvis admits SigmaTron's statement that Mr. Ottaviano's touching "was done strictly as a friendly gesture, with no sexual intent or attempted sexual innuendo." (Pl.'s Resp. to Def.'s Statement of Facts ¶ 35.) Ms. Jarvis is bound by this admission, despite her claim in her own statement of facts that she believed Mr. Ottaviano's touching was sexually motivated (Pl.'s Statement of Facts ¶ 26). *See Midwest Imps., Ltd. v. Coval,* 71 F.3d 1311, 1316-17 (7th Cir. 1995) (requiring strict compliance with Local Rule 56.1(b) (formerly rule 12(N)), which provides the only acceptable means of disputing an opposing party's facts).

eat, he bet she tasted good, and he dreamed about her coming out of the shower). These acts of physical contact and sexual solicitation constitute more than just "the occasional vulgar banter. . . of coarse or boorish workers." *Baskerville,* 50 F.3d at 430.

### B. Employer Liability

In determining that the harassment to which Ms. Jarvis says she was subjected was severe or pervasive enough to constitute an objectively hostile environment, I did not distinguish between conduct of her superiors and conduct of her coworkers. *See Mason v. Southern Illinois Univ. at Carbondale,* 233 F.3d 1036, 1044-45 (7th Cir. 2000). The distinction is relevant for determining employer liability, however. *See Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998). When the harasser is a supervisor, the employer is strictly liable for the supervisor's conduct, subject to an affirmative defense. *See id.* (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998)). When the harasser is a coworker, the employer is liable only for negligence in discovering or remedying the harassment. *See Parkins,* 163 F.3d at 1032.

### 1. Liability for Harassment by Supervisors

The only two alleged harassers here who could arguably be called supervisors are Mr. Ottaviano and Mr. Saarnio. As noted above, Mr. Ottaviano's conduct was not actionable harassment. The

8

only conduct of Mr. Saarnio that could possibly have contributed to the hostile enviornment was the incident in which he reportedly watched Ms. Jarvis bending over. Even if such conduct were considered harassment, it is not sufficient to trigger application of the strict liability standard. *See Wilson v. Chrysler Corp.*, 172 F.3d 500, 508-09 (7th Cir. 1999) (act of four supervisors signing a lewd greeting card held insufficient to trigger strict liability where thirty-four non-supervisory employees signed card and non-supervisors were responsible for "the lion's share" of the harassment).

2. Liability for Harassment by Coworkers

An employer is liable for harassment by coworkers only when it has been "negligent either in discovering or remedying the harassment." *Parkins*, 163 F.3d at 1035. Notice or knowledge by the employer of the harassment is a prerequisite for liablity. *See id.* "[A] plaintiff cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." *Id.* (internal quotation omitted).

Here, Ms. Jarvis states that she complained to Mr. Maberry specifically about the conduct of Mr. Colbert (Jarvis Dep. at

9

¶¶ 150, 154-55) and Mr. Anthanailos (Jarvis Dep. at ¶¶ 167-68).[3] According to the SigmaTron sexual harassment policy, reporting harassment to her immediate supervisor was the appropriate course of action for Ms. Jarvis. (Fairfeld Aff. Ex. A.) Even if Ms. Jarvis was unaware of the official policy, she could reasonably believe that her immediate supervisor was the proper party to whom to report coworker harassment. Complaining to Mr. Maberry about the conduct of Mr. Colbert and Mr. Anthanailos was thus sufficient to put SigmaTron on notice that there was some probability that Ms. Jarvis was being harassed. *See Parkins,* 163 F.3d at 1035 (to put employer on notice of harassment, employee should complain to a "point person" designated by employer policy to accept complaints, or someone the employee "reasonably believe[s] [is] authorized to receive and forward (or respond to) a complaint of harassment").

While Ms. Jarvis presents sufficient evidence that SigmaTron was on notice of harassment by coworkers, she must also show that SigmaTron "fail[ed] to take appropriate remedial action." *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 480 (7th Cir. 1996). Here, Ms. Jarvis states that she complained twice to Mr. Maberry about Mr. Colbert's conduct, and that following the second complaint, she believes Mr. Maberry spoke either to Mr. Ottaviano, or directly to Mr. Colbert. (Jarvis Dep. at 152-55.) In either

---

[3] Ms. Jarvis states that she did not complain to superiors about the conduct of Mr. Navarette (Jarvis Dep. at 179-80) and Mr. Cool (Jarvis Dep. at 176).

case, she admits that Mr. Colbert did "not really" bother her again. (Jarvis Dep. at 155.) Likewise, Ms. Jarvis states that after she complained to Mr. Maberry about Mr. Anthanailos, Mr. Maberry spoke to Mr. Ottaviano and made sure that Ms. Jarvis would not have to work with Mr. Anthanailos. (Jarvis Dep. at 167-68.) As a result, Mr. Anthanailos "[p]retty much for the most part" stayed away from Ms. Jarvis. (Jarvis Dep. at 168.) These responses by Mr. Maberry to Ms. Jarvis's complaints are completely reasonable, and preclude a finding of negligence on the part of SigmaTron. See *McKenzie,* 92 F.3d at 480-81 (affirming summary judgment for an employer where an employee's direct supervisor responded to her complaints of sexual harassment by asking the harasser to work things out with the employee and reporting the complaint to his own supervisor, and where the employer ensured that there would be no further contact between the employee and the harasser and issued a memo to all employees regarding the employer's sexual harassment policy). Thus, SigmaTron cannot be held liable for the hostile workplace environment created by Ms. Jarvis's coworkers.

III. Gender Discrimination

Ms. Jarvis also alleges in her complaint, under both Title VII and the Equal Pay Act, that she did not receive pay increases and promotions because of her sex. While she has dropped her Equal Pay Act claim, she continues to pursue the claim under Title VII.

SigmaTron seeks summary judgment on this claim as well. However, it fails to support this part of its motion with evidence to dispute Ms. Jarvis' claim. Thus, while the statements referred to in Ms. Jarvis' response (such as, a statement by a supervisor that men are paid more because they have families) would not be sufficient to sustain her claim in the presence of objective evidence that men with comparable positions in fact were paid equally, SigmaTron's bare claims, unsupported by record evidence, that anyone paid more either had greater duties or experience,[4] and its statements that Ms. Jarvis in fact received promotions and pay increases is insufficient in itself to require a response by Ms. Jarvis. Its motion for summary judgment on Ms. Jarvis' Title VII claim is therefore denied.

SigmaTron argues that part of Ms. Jarvis' claim with respect to pay is time-barred because in Illinois, a state with an agency designated for consideration of discrimination claims, a Title VII claimant has 300 days after a discriminatory act to file a charge with the EEOC. See 42 U.S.C. 2000e-5(e)(1); *Winters v. Iowa State Univ.*, 768 F. Supp. 231, 237 (N.D. Ill. 1991) (Shadur, J.), aff'd, 962 F.2d 11 (7th Cir. 1992). Failure to do so is fatal. See *Winters*, 768 F. Supp. at 237. The Seventh Circuit has recognized

---

[4] SigmaTron's affidavit documents pay received by various people. No record evidence supports its further statements regarding why certain people deserved higher pay than that received by Ms. Jarvis.

a "continuing violation" doctrine under which an EEOC charge is considered timely filed if the plaintiff demonstrates "that the acts of alleged discrimination are part of an ongoing pattern of discrimination and that at least one of the alleged discrete acts of discrimination occurred within the relevant limitations period." *Young v. Will County Dep't. of Pub. Aid*, 882 F.2d 290, 292 (7th Cir. 1989).

One purpose of the continuing violation doctrine is to protect plaintiffs who are subject to an ongoing practice of discrimination over a period of time who can only realize they are the victim of discrimination after a series of discrete acts has occurred. *See Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994). Once the plaintiff gains such insight, the limitations period begins to run. *See id.* Because Ms. Jarvis filed her EEOC complaint on March 24, 2000 (Compl. Ex. A), it is timely only if she knew or should have known of the ongoing pay discrimination on or after May 29, 1999. Ms. Jarvis became aware of the discrimination no later than the point at which Mr. Ottaviano told her that men supporting families were paid more than she was. Unfortunately, neither party indicates when this conversation occurred. Because "all doubts on jurisdictional timeliness are to be resolved in favor of trial," *Young*, 882 F.2d at 292, Ms. Jarvis's gender discrimination claim is not barred for failure to file a timely complaint with the EEOC.

13

## IV. Conclusion

SigmaTron's motion for summary judgment is GRANTED with respect to the harassment claim. It is denied as to Ms. Jarvis' Title VII claim.

ENTER ORDER:

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: September 26, 2002